UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEWISH CENTER FOR AGED, a Missouri benevolent corporation, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 4:07-CV-750 (JCH) ) |
| UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

The matter is before the Court on Defendant United States Department of Housing and Urban Development's ("HUD") Motion to Dismiss or in the Alternative Motion for Summary Judgment, filed April 25, 2007. (Doc. No. 3). Also before the Court is Plaintiff Jewish Center for Aged's ("Plaintiff") Motion for Summary Judgment, filed June 4, 2007. (Doc. No. 13). The matter is fully briefed and ready for a decision.

**BACKGROUND**

In February 2001, JCA and a related entity JCA Support Co. ("JCA Support") undertook a program to finance, construct, and operate a 276 bed nursing home ("Nursing Home") in Town and Country, Missouri on land owned by JCA ("Property"). (Compl., Doc. No. 1 ¶ 6). On February 21, 2001, JCA and JCA Support engaged in a series of transactions to facilitate this plan. (Id. at ¶ 7-13).

First, JCA leased JCA Support the Property pursuant to a ground lease ("Ground Lease") lasting fifty-five years and requiring JCA Support to pay a yearly rent of one dollar. (Id. at ¶ 7-8(a), citing Ex. A § 3,4). The Ground Lease contained three other provisions of note. It stated that:

> Permitted Leasehold Mortgages. Notwithstanding anything else herein, [JCA Support] shall have the right during the Term to encumber, by a Leasehold Mortgage (as hereinafter defined) all of [JCA Support's] right, title and interest in the Real Property and Improvements subject to the provisions of this Lease; provided, however, that the same shall be in all respects subordinate and inferior to [JCA's] right, title and interest as provided in this Lease, and that the holder, mortgagee, grantee or secured party under such Leasehold Mortgage ... shall be subject to all of the rights and obligations of [JCA] herein contained in this Lease. For purposes hereof, a "Leasehold Mortgage" shall be any mortgage, deed of trust, security agreement, collateral assignment or other encumbrance of [JCA Support's] leasehold interest in the Real Property and Improvements pursuant to HUD 232 Mortgage Insurance for Residential Care Facilities Program.

(Id. at § 25). Second, it stated that:

> Tenant Default under Leasehold Mortgages. ... Additionally, notwithstanding anything herein, [JCA] and [JCA Support] agree that, in the event of a failure of [JCA Support] to pay any amount due under the Leasehold Mortgage, and in the further event that HUD or any Leasehold Mortgagee determines to pursue any remedy under the Leasehold Mortgage or the HUD Addendum which could affect the possession of the Real Property, [JCA] will be given notice ("Purchase Notice") of such failure to make payment and will have a first right to acquire [JCA Support's] leasehold interest together with the Improvements and other assets of [JCA Support] related thereto for a purchase price equal to the then fair market value thereof. [JCA] shall not be required to assume any liabilities of [JCA Support]. Such fair market value shall be determined by a licensed or otherwise accredited appraiser selected by [JCA], subject to reasonable approval by HUD .... If [JCA] declines to exercise its option, HUD ... may declare [JCA Support] in default under the Leasehold Mortgage and may take any and all action permitted by such agreement and by law. [JCA] must give notice to ... HUD ... of its intention to exercise its right to acquire [JCA Support's] Leasehold interest pursuant to the terms hereof within thirty (30) days of receipt of the Purchase Notice and shall thereafter have one hundred twenty (120) days to close the purchase.

(Id. at § 26). Finally, it contained the "HUD addendum," which allowed JCA Support to obtain a loan insured by HUD. It also stated that, should HUD acquire title to the leasehold interest, it may buy title to the Property for $6,351,392. (Id. at Ex. D §§ i-ii).

On February 21, 2001, JCA Support entered into a Deed of Trust Note ("Note") for $55,000,000 with Gershman Investment Corp ("Gershman") to finance the Nursing Home. (Compl. ¶ 11). JCA Support then leased the Nursing Home to JCA for a term of fifty-five years and a rent

equaling the monthly payment required to service the Note. (Id. at Ex. B §§ 1,3). This lease stated that it was "subordinate to any secured financing ... established by" JCA Support and subject to the Ground Lease. (Id. at §§ 1, 2(e)). All of these documents were properly recorded. (Id. at ¶ 12-13).

JCA Support failed to make timely payments, and Gershman assigned its rights and interests in the Note to Greystone Servicing Corporation Inc. ("Greystone") as part of a plan agreed upon by Gershman, Greystone, HUD, JCA, and JCA Support. (Id. at ¶ 14-15). Greystone later decided to exercise its right and assigned the Note to HUD, which paid $58,199,316.70 in May, 2006 to acquire it. (4:06-cv-1739, Memo. in Supp., Doc. No. 25 Ex. 2, 3). As of January 1, 2007, JCA Support owes HUD $8,637,610.18 in unpaid mortgage payments. (Id.).

HUD placed notice in the Federal Register that it was auctioning the Note on December 6, 2006. Notice of HUD-Held Multifamily and Healthcare Loan Sale, 72 Fed. Reg. 67625 (Nov. 22, 2006). HUD employed the Debt Exchange to help advertise the auction. (Compl. ¶ 20-22).

JCA originally filed an action in the Circuit Court for the County of St. Louis, Missouri on December 4, 2006. (State Court File, Doc. No. 1 pg. 3). HUD notified JCA that it intended to remove the case and suggested that JCA voluntarily dismiss the action. JCA, without dismissing the initial action, filed a new cause of action in this Court on December 6, 2006. (4:06-cv-1739 (JCH) ("Dec. Case"), Compl., Doc. No. 1). JCA asked for a declaratory judgment in the Dec. Case stating that § 26 of the Ground Lease provides it with a right of first purchase of the Nursing Home, that the Note is subordinate to the Ground Lease, that HUD's actions have triggered the Ground Lease, and that it is entitled to Purchase Notice. (Id.). Additionally, it asked for injunctive relief. (Id.). JCA also filed a Motion for a Temporary Restraining Order to stop the auction. (Dec. Case, Doc. No. 2). On December 8, 2006, the Court issued a temporary restraining order and scheduled a preliminary

injunction hearing for December 27, 2006. (Dec. Case, Order, Doc. No. 4). Later that day, HUD cancelled its sale. (Dec. Case, Memo. in Supp., Doc. No. 10 Ex. A ¶ 4).

On January 16, 2007, HUD filed a Motion for Judgment on the Pleadings arguing that it had not waived sovereign immunity and no subject matter jurisdiction existed. (Dec. Case, Mot. for J. on Pleadings, Doc. No. 18). On March 9, 2007, the Court granted its motion after finding that, although Congress had waived sovereign immunity, no subject matter jurisdiction existed. (Dec. Case, Order of Mar. 9, 2007, Doc. No. 35).

On April 18, 2007, HUD filed a notice of removal[1] after it realized that JCA never dismissed the initial case in state court. (Notice of Removal, Doc. No. 1). As previously stated, HUD filed a Motion to Dismiss or in the Alternative Motion for Summary Judgment on April 25, 2007. (Doc. No. 3). JCA filed its Motion for Summary Judgment on June 4, 2007. (Doc. No. 13).

## **MOTION TO DISMISS STANDARDS**

Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss a claim if the court lacks subject matter jurisdiction over it. Dismissal for lack of subject matter jurisdiction, however, will not be granted lightly. Wheeler v. St. Louis Southwestern Ry. Co., 90 F.3d 327, 329 (8th Cir. 1996). The standards applied to a Rule 12(b)(1) motion to dismiss are the same as those that apply to a Rule 12(b)(6) motion to dismiss. Vankempen v. McDonnell Douglas Corp., 923 F. Supp. 146, 147 (E.D. Mo. 1996) (citing Satz v. ITT Fin. Corp., 619 F.2d 738, 742 (8th Cir. 1980).

---

[1]A defendant must remove an action within thirty days after receipt of the complaint. 28 U.S.C. § 1446(b). It appears that the Court must remand this case because HUD's removal was untimely. The Notice of Removal, however, states that the parties agree that all timeliness issues are waived. The thirty day time limit is not jurisdictional, Pender v. Bell Asbestos Mines, Ltd., 145 F. Supp. 2d 1107, 1110 (E.D. Mo. 2001) and it is not a ground for remand where the parties waive timeliness objections. Rampy v. Southwestern Bell Tel. Co., 615 F. Supp. 996, 999 (W.D. Mo. 1985)(citing N. Illinois Gas Co. v. Airco Indus. Gases, 676 F.2d 270, 273 (7th Cir. 1982)); see Fin.Timing Publ'n v. Compugraphic Corp., 893 F.2d 936, 938-40 (8th Cir. 1980). As such, the thirty day time limit is waived and § 1446(b) does not require the Court to remand this action.

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint in the light most favorable to Plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Additionally, the Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005). A motion to dismiss must be granted if the Complaint does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. ---, 127 S. Ct. 1955, 1974, --- L. Ed. 2d ---, 75 U.S.L.W. 4337, (2007) (abrogating the "no set of facts" standard for Fed. R. Civ. P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Stated differently, to survive a motion to dismiss, the Complaint's factual allegations "must be enough to raise a right to relief above the speculative level." Id. at 1965.

## DISCUSSION

### I. SOVEREIGN IMMUNITY

To sue the United States, a plaintiff must show both a waiver of sovereign immunity and a grant of subject matter jurisdiction[2]. V S Ltd. P'ship v. HUD, 235 F.3d 1109, 1112 (8th Cir. 2000). Only Congress can waive sovereign immunity, United States v. Mitchell, 463 U.S. 206, 215-16 (1983) and consent to being sued must be "unequivocally expressed in the statutory text and the scope of a sovereign immunity waiver is strictly construed in favor of the sovereign." Miller v. Tony & Susan Alamo Found., 134 F.3d 910, 916 (8th Cir. 1998)(internal citations omitted). Any ambiguities must be resolved in the government's favor. Rutten v. United States, 299 F.3d 993, 995 (8th Cir. 2002)(citing United States v. Nordic Village, Inc., 503 U.S. 30, 34 (1992)). A statute's

---

[2]Subject matter jurisdiction is not at issue here. 28 U.S.C. § 1442 provides that a civil action commenced in a state court against "[a]ny officer of the United States or any agency thereof" may be removed to the appropriate federal court. 28 U.S.C. § 1442(a)(1). This section is a grant of subject matter jurisdiction. See Bor-Son Bldg. Corp. v. Heller, 572 F.2d 174, 179 (8th Cir. 1978).

purpose and legislative history are irrelevant when determining if it waives sovereign immunity. Lane v. Pena, 518 U.S. 187, 192 (1996). The Supreme Court construes "sue and be sued" waiver clauses liberally. 14 Charles Alan Wright et al., Federal Practice and Procedure § 3654-55 (discussing FDIC v. Meyers, 510 U.S. 471 (1994)).

In their summary judgment motions, the parties present several arguments concerning sovereign immunity and its waiver. JCA asserts that the National Housing Act ("NHA"), 12 U.S.C. § 1702, the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, and the Quiet Title Act, 28 U.S.C. § 2410, all waive sovereign immunity. Conversely, HUD contends that the NHA's waiver is inapplicable because 12 U.S.C. § 1715z-11a(a)(1), which allegedly authorizes HUD's sale of the Note, is outside the scope of the NHA waiver. It also contends that the waiver of sovereign immunity in the APA is inapplicable because the Tucker Act, 28 U.S.C. § 1491, forbids its application.[3] Finally, it contends that the Quiet Title Act does not apply because JCA does not own the property.

### A. The National Housing Act

HUD presents three bases for asserting that 12 U.S.C. § 1702 does not waive sovereign immunity in this case. First, it asserts that § 1702 only applies to provisions of the NHA, despite contrary language in the United States Code ("Code"). Next, it asserts that § 1715z-11a(a)(1) is the applicable grant of statutory authority that provides HUD with the ability to sell the Note. Finally, it contends that § 1715z-11a(a)(1) is not part of the NHA. JCA counters that § 1715w authorizes HUD to sell the note and the plain language of the Code extends the waiver to § 1715z-11a(a)(1).

#### 1. The NHA Waiver's Proper Text

---

[3]The Court rejected this argument in its previous order. (Dec. Case, Order of Mar. 9, 2007, Doc. No. 35).

Section 1702 of the Code provides that "[t]he Secretary[4] shall, in carrying out the provisions of this subchapter and subchapters II, III, V, VI, VII, IX-B, and X of this chapter, be authorized, in his official capacity to sue and be sued in any court of competent jurisdiction, state or federal."[5] 12 U.S.C. § 1702. Thus, the waiver apparently extends beyond the NHA to any provision found in the enumerated subchapters. The version of the waiver contained in the Statutes at Large ("Statutes"), however, contains slightly different language. It states that "the Secretary shall, in carrying out the provisions of this title and titles II, III, V, VI, VII, IX-B, and X of [the NHA], be authorized, in his official capacity to sue and be sued in any court of competent jurisdiction, state or federal." Act of Aug. 23, 1935, c. 614 § 344(a), 49 Stat. 722 (as amended).[6] Generally, the Code is prima facie evidence of the law of the United States. 1 U.S.C. § 204(a). In a conflict between the Statutes and the Code, the Statutes prevail. Stephan v. United States, 319 U.S. 423, 426 (1943). Thus, the Statutes' text is controlling, and its plain language states that § 1702 only applies to the listed NHA provisions.

## 2. HUD's Statutory Authority to Sell the Note

The Court must next determine which statutory provision allows HUD to sell the Note. HUD contends that 12 U.S.C. § 1715z-11a(a)(1) is the controlling provision. JCA counters that 12 U.S.C. § 1715w authorizes the sale.

---

[4]Unless otherwise indicated, "Secretary" refers to the Secretary of Housing and Urban Development. See 12 U.S.C. § 1702.

[5]Courts treat this statute as "launch[ing HUD] into the commercial world," meaning that it is "not less amenable to judicial process than private enterprise under like circumstances would be." Heller, 572 F.2d at 179 (internal quotations omitted). The "in carrying out" clause means that HUD must be acting pursuant to its regulatory or statutory duty. V S Ltd. P'ship, 235 F.3d at 1113.

[6]This section was amended numerous times, and the amendments are recounted in the statutory notes to 12 U.S.C. § 1702.

12 U.S.C. § 1715w[7], which is found in title II of the NHA, relates to mortgage insurance for nursing homes. See 12 U.S.C. § 1715w(a)(1) (stating the purpose of this section is to assist in the "development of nursing homes."); id. at § 1715w(b)(1) (defining "nursing home"). It authorizes the Secretary to "insure any mortgage ... in accordance with the provisions of this section upon such terms and conditions as he may prescribe... ." 12 U.S.C. § 1715w(c). It also incorporates the provisions of 12 U.S.C. § 1713(d)-(l), (n). See 12 U.S.C. § 1715w(f). Section 1713(k)'s incorporation is significant because it permits the Secretary "to exercise all the rights of a mortgagee, including the right to sell the mortgage" when HUD is assigned a mortgage due to a mortgagee applying for housing insurance benefits. See Little Earth of the United Tribes, Inc. v. HUD, 807 F.2d 1433, 1442-43 (8th Cir. 1986). Thus, if § 1715w is controlling, HUD has waived its sovereign immunity.

Section 1715z-11a(a)(1)[8] states "the Secretary may manage and dispose of multifamily properties owned by the Secretary ... and multifamily mortgages held by the Secretary on such terms and conditions as the Secretary may determine, notwithstanding any other provision of law." 12 U.S.C. § 1715z-11a(a)(1) (emphasis added). HUD regulations define "multifamily properties" to include nursing homes. See 24 C.F.R. 290.3.

Upon consideration, the Court finds that § 1715z-11a(a)(1) is the controlling statutory authority. First, the "notwithstanding any other provision of law" clause signals that § 1715z-11a(a)(1) supercedes any other statute that could interfere or hinder its objectives. See Campbell v. Minneapolis Pub. Hous. Auth. ex rel. City of Minneapolis, 168 F.3d 1069, 1075 (8th Cir. 1999) (quoting Cisneros

---

[7]This section was originally enacted in 1959. See Housing Act of 1959, Pub. L. No. 86-372, § 115, 73 Stat. 654, 663.

[8]This section was enacted in 1996. See Departments of Veteran Affairs and Housing and Urban Development, and Independent Agencies Appropriations Act of 1997, Pub. L. No. 104-204, § 204, 110 Stat. 2874, 2894 (1996).

v. Alpine Ridge Group, 508 U.S. 10, 18 (1993) ("As we have noted previously in construing statutes, the use of such a 'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override the conflict provisions of any other section)). Second, a well-established principle of statutory construction is that a "specific statutory provision prevails over a more general provision." Bigger v. Am. Commercial Lines, 862 F.2d 1341, 1344 (8th Cir. 1988); accord Goodin v. United States Postal Inspection Serv., 444 F.3d 998, 1001 (8th Cir. 2006). Here, § 1715z-11a(a)(1) is a more narrowly tailored statute because it relates solely to the disposition of HUD mortgages whereas § 1715w creates a general framework for the insurance and disposition of HUD backed mortgages for nursing homes. Finally, a later enacted statute may limit the scope of an earlier statute if the two conflict. See Vimar Seguros Y Reaseguros, S.A. v. M/V Sky Reefer, 29 F.3d 727, 732 (1st Cir. 1994). Here, § 1715w was enacted well before § 1715z-11a(a)(1). As such, the Court finds that § 1715z-11a(a)(1)is the controlling statutory provision.

### 3. **Section 1715z-11a(a)(1) Did Not Amend the NHA**.

Finally, the Court must determine whether § 1715z-11a(a)(1) was an amendment to the NHA. If § 1715z-11a(a)(1) amended the NHA, then § 1702's waiver of sovereign immunity is applicable. Generally, courts will not find an amendment without express amendatory language because it is "strongly presumed that Congress will specifically address language on the statute books that it wishes to change." United States v. Fausto, 484 U.S. 439, 453 (1988); United States v. Hsia, 176 F.3d 517, 525 (D.C. Cir. 1999) (stating that it strongly presumes that Congress "legislates with knowledge of former related statutes."). Although the Court can view a statute as an implied amendment, it is a disfavored practice that is only used in "the rarest cases." Galvan v. Hess Oil Virgin Island Corp., 549 F.2d 281, 288 (3d Cir. 1977); see Bhd. of Maint. of Way Employees v. CSX Transp., Inc., 478 F.3d 814, 818 (7th Cir. 2007)(stating amendment by implication is "not easily found"). It should only be

found when there "exists a positive repugnancy between the provisions of the new and those of the old that cannot be reconciled." Blanchette v. Connecticut Gen. Ins. Corp., 419 U.S. 102, 133-34 (1974). Section 1715z-11a(a)(1) was not explicitly enacted as an amendment to the NHA. See § 204, 110 Stat. 2874 at 2894 (containing no amendatory language). Because the Court finds that this is not one of those "rarest cases," § 1715z-11a(a)(1) is not an implied amendment to the NHA. As such, it is not part of the NHA and § 1702 does not apply to it. Thus, the Court finds that the NHA does not waive HUD's sovereign immunity.[9]

### 4. No Other Waiver of Sovereign Immunity Exists

JCA also alleges that the APA and the Quiet Title Act waive HUD's sovereign immunity. Upon consideration, neither statute waives sovereign immunity in this case. The APA cannot waive sovereign immunity because its waiver does not apply when "any other statute that grants consent to suit expressly or impliedly forbids the relief that is sought." See 5 U.S.C. § 702. The failure of the NHA waiver of immunity to include § 1715z-11a(a)(1) implicitly forbids review. Additionally, the APA's waiver would run afoul of the "notwithstanding" clause found in § 1715z-11a(a)(1) that supercedes any other statute that hinders or impedes its objectives. Similarly, the Quiet Title Act's waiver unquestionably would impede § 1715z-11a(a)(1) for the same reasons.[10] As such, JCA cannot show a waiver of sovereign immunity.

## CONCLUSION

---

[9] Had JCA pled that HUD had violated its own regulations, the Court may have come to a different conclusion. See Massie v. HUD, No. 06-1004, 2007 WL 674597, at *3 (W.D. Pa. March 1, 2007).

[10] Even if this Court did find that the Quiet Title Act waived sovereign immunity, § 1715z-11a(a)(1)'s "notwithstanding any other provision of law" clause would override Plaintiff's asserted rights. See HUD v. Rucker, 535 U.S. 125, 131 (2002)(holding use of word "any" by Congress shows an intent to place no qualifications on the clause).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment (Doc. No. 3) is **GRANTED** and the Complaint is **DISMISSED**. A separate order of dismissal will accompany this Order.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. No. 13) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Stay Discovery (Doc. No. 20) is **DENIED** as moot.

Dated this 24th day of July, 2007.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE